# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Anthony J. Heppner, | Civ. No. 09-2926 (PAM/JJK) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden Wendy J. Roal, | |
| Respondent. | |

Anthony J. Heppner, #12185-041, FPC, P.O. Box 1000, Duluth, MN 55814, *pro se*.

D. Gerald Wilhelm, Esq., and Gregory G. Brooker, Esq., Assistant United States Attorneys, counsel for Respondent.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1), and Petitioner's Motion for Judgment on the Pleadings (Doc. No. 8). The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that Petitioner's Petition for habeas corpus relief and Petitioner's motion be denied.

## BACKGROUND

Petitioner is serving a 46-month sentence, followed by three years of

supervised release, imposed by United States District Judge John Tunheim of the United States District Court, District of Minnesota, for Mail Fraud in violation of 18 U.S.C. §§ 1341 and 1342. Petitioner has a projected release date of October 4, 2010, pursuant to Good Conduct Time ("GCT") release. He is currently incarcerated at the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth").

In May 2009, the Bureau of Prisons ("BOP") conducted a review to determine whether Petitioner should be placed in a Residential-Reentry Center ("RRC"), at the end of his prison term. The BOP unit team considered the Second Chance Act of 2007 ("SCA"), and the five factors enumerated in 18 U.S.C. § 3621(b) when they made their recommendation for Petitioner's RRC placement. (Doc. No. 6, Decl. of Angela Buege ("Buege Decl.") ¶ 6, Attach. B.) The BOP unit team recommended a 150-to-180-day RRC placement as the "sufficient duration to provide the greatest likelihood of successful reintegration into the community." (*Id.*) Respondent anticipates that Petitioner's RRC placement will occur between April and May 2010.

Petitioner alleges that the BOP staff violated the SCA by denying his request for a 12-month prerelease transfer to a RRC. (Doc. No. 1 at 3.) He contends that, pursuant to the SCA, the BOP was required to give him a 12-month period of placement in a RRC, not a period of only 150-180 days. Plaintiff

2

also alleges that the BOP staff violated program statement 5100.08, *Inmate Security Designation and Custody Classification*, and 18 U.S.C. § 3621(b) when the BOP denied his request for a "Code 308 - Lesser Security – Institutional Classification Transfer" to community confinement. (*Id.* at 3.) He contends that the BOP is required to "expeditiously and fairly place inmates with very low (i.e. below zero) BP-338 scores in community confinement; and, in particular, . . . to place in community confinement (if practicable) all inmates with BP-338 scores below the prison camp range specified in the current iteration of P5100." (Doc. No. 2, Prelim. Br. and App. of Exs. in Supp. of Pet. for Writ of Habeas Corpus under 29 U.S.C. § 2241 at 11.)

Following the BOP unit team's recommendation of a 150-to-180-day RRC placement, Petitioner filed requests with the BOP for review of his case, and ultimately the regional office of the BOP rejected his appeals on September 22 and 30, 2009. Petitioner apparently submitted an appeal to the Central Office, but it was rejected because he had not attached the Warden's response. Petitioner claims that he had attached the Warden's response. In any event, the Central Office did not take up Petitioner's appeal, which would have been the last step in the three-part administrative-remedy program of the BOP designed to address a federal inmate's concerns regarding any aspect of his or her

confinement.[1]  On October 21, 2009, Petitioner filed a Petitioner for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 with this Court.

## DISCUSSION

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). However, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

**I.      Second Chance Act**

RRC assignments are governed by 18 U.S.C. § 3624(c)(1), which provides as follows:

> The Director of the [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). Congress has granted the BOP not only the discretion to determine where to house an inmate, but also the discretion to determine,

---

[1] Petitioner acknowledges that he has not exhausted his administrative remedies with the BOP as to the claims presented here, but he contends that he should not have to exhaust those remedies before seeking habeas corpus relief because it would be futile. Because this Court concludes that Petitioner's claim
(Footnote Continued on Next Page)

through the individualized consideration required by the SCA, the length of an inmate's RRC placement. *See id.* § 3624(c)(6) (requiring the BOP to issue new regulations designed to ensure that RRC assignments are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on *an individual basis*; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community") (emphasis added). Further, the statute sets the maximum amount of time that a prisoner can spend at a RRC as not more than 12 months, but does not set any minimum amount of time that a prisoner must spend at a RRC. *Id.* § 3624(c)(1); *see also Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008) (quoting § 3624(c)(1)); *Stewart v. Cruz*, No. 08-4380 (ADM/RLE), 2008 WL 3893600, at *2 (D. Minn. Aug. 20, 2008) ("[T]he statute itself clearly indicates, on its face, that the BOP is to determine, on an **individual basis**, how much time each Federal Prisoner should spend at an RRC. The statute sets a maximum amount of time that a prisoner can spend at an RRC—not more than twelve (12) months—but the statute does not set any minimum amount of time that a prisoner must spend at an RRC"). And neither the SCA nor any other statutory authority requires transfer of an inmate to a RRC. *See Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004) ("18 U.S.C.

---

(Footnote Continued from Previous Page)
fails on the merits, this Court does not address the failure-to-exhaust issue.

§ 3624(c) does not require placement in a CCC. It only obligates the BOP to facilitate the prisoner's transition from the prison system . . . . [T]he obligation is qualified by the phrase "to the extent practicable."); *see also* 18 U.S.C. § 3624(c)(4) (providing that the statute does not limit or restrict the authority of the BOP under 18 U.S.C. § 3621(b) to designate the place of the prisoner's imprisonment).

The crux of Petitioner's argument is that the BOP has violated the SCA because the BOP has not adopted procedures required by the Act. Specifically, Petitioner contends that the BOP's April 14, 2008 Memorandum, entitled *Memorandum for Chief Executive Officers* ("April 2008 Memo"), which implemented the requirements of the SCA, violated the requirements of the Act. However, this Court concludes that the April 2008 Memo, and subsequent actions of the BOP, conform to the requirements of the SCA.

The April 2008 Memo implemented the requirements of the SCA that became immediately effective in April 2008, when the SCA was signed into law. (*See* Doc. No. 5, Decl. of Bernetta Miller ("Miller Decl.") ¶ 2, Ex. A.); *see also Miller*, 527 F.3d at 756 (noting the interim guidance issued by the BOP to implement the SCA). The Memo specifically instructed BOP staff that the SCA increases RRC placements to a maximum of twelve months, that RRC placement determinations are to be made on an individual basis according to

new criteria in the SCA and criteria set forth at 18 U.S.C. § 3621(b), and that sentencing court orders, recommendations, or requests concerning an inmate's RRC placement are not binding. (*See* Miller Decl., Ex. A at 2.) It specifically directs BOP staff to review inmates for RRC placement 17-19 months prior to their projected release dates and sets forth the five factors from 18 U.S.C. § 3621(b) that must be considered in determining the length of RRC placements. (*Id.* at 3.)

The April 2008 Memo also instructs BOP staff that the SCA requires them "to ensure that each pre-release RRC placement decision is 'of sufficient duration to provide the greatest likelihood of successful reintegration into the community'" and states that this means "Bureau staff <u>must</u> approach every individual inmate's assessment with the understanding that he/she is now <u>eligible</u> for a maximum of 12 months pre-release RRC placement." (*Id.* at 4 (emphasis in original).) In addition, the April 2008 Memo states:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

(*Id.*)

The BOP subsequently published, on October 21, 2008, an interim rule

7

with a request for comments.  *See* 73 Fed. Reg. 62,440 (Oct. 21, 2008) (codified at 28 C.F.R. §§ 570.20-570.22).  The rule was posted for the inmate population.  The interim rule, however, does not include the language of the April 14, 2008 Memorandum with regard to placements of greater than six months.  *See Strong v. Schultz*, 599 F. Supp. 2d 556, 562-63 (D. N.J. 2009) ("[O]n October 21, 2008, the BOP adopted regulations which do not contain the limiting criteria of the April 14, 2008[] Memorandum . . . . Unlike the April 14, 2008[] Memorandum, the regulation entitled "Designation" does not limit the discretion of staff to designate inmates to a CCC for more than six months[.]").

Then, on November 14, 2008, the BOP issued another guidance memo, *Inmates Requests for Transfer to Residential Reentry Center* ("November 2008 Memo"), which provides that the April 14, 2008, guidance memorandum remains in full effect.  (Miller Decl. ¶ 3, Ex. B at 1 n.1.)  The November 14, 2008 Memo continues to apply long-standing BOP policy by stating:  "An RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs." (*Id.* at 3.)

The Eighth Circuit has considered and rejected a challenge similar to Petitioner's concerning the validity of the April 2008 memorandum.  *Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008).  In *Miller*, inmates challenged the

BOP guideline that stated that "placement in an RRC for more than 180 days is 'highly unusual' and possible only with an 'extraordinary justification.'" *Id.* at 757. The Eighth Circuit reviewed and upheld the "extraordinary justification" policy in light of the SCA, explaining that this guideline was not inconsistent with 18 U.S.C. § 3621(b):

> [T]he requirement that an inmate make a stronger showing under the statutory factors to justify an extended RRC placement does not categorically remove the opportunity for the BOP to exercise its discretion with respect to an entire class of inmates. Rather, the program statement reflects a determination that *ordinarily* a placement of more than 180 days is not appropriate under § 3621(b). But a particular inmate still has an opportunity to show that in the individual circumstances of his case, a longer placement would be justified.

*Id.* at 758 (emphasis in original). The BOP's subsequent November 2008 Memo reiterates the "extraordinary justification" policy upheld by the Eighth Circuit in *Miller*. And the November 2008 Memo was in place when Petitioner's unit team recommended him for a 150-to-180 day RRC placement in May 2009.

The District Court in Minnesota also recently upheld the BOP's interpretation of its discretion to make RRC decisions under the SCA in a case where the petitioner challenged the validity of the April 2008 memorandum contending that it unlawfully established a presumptive six-month ceiling on RRC placement. *See Esters v. Jett*, Civ. No. 09-1667 (MJD/AJB), 2009 WL 3417900, at *4 (D. Minn. Oct. 21, 2009). There the Court stated the following:

9

> The exercise of BOP discretion with respect to the 12-month RRC placement as permitted under the SCA was not restricted or precluded under BOP Program Statement 7310.04 in either its pre-SCA form or as modified by language contained in the April 14, 2008, memorandum stating that inmate pre-release RRC needs can usually be accommodated by placement of six months or less and requiring Regional Director approval of an RRC placement greater than six months.

*Id*.

In light of the Eighth Circuit's opinion in *Miller* and the District Court opinion in *Esters*, which both recognize that BOP's policies give inmates the individualized review required by the SCA while maintaining BOP's ultimate discretion to make RRC-placement decisions, Petitioner's claim that the BOP's April 2008 memorandum is invalid should be denied.

## II.     Security-Classification Claim

Petitioner also alleges that the BOP staff violated PS5100.08 *Inmate Security Designation and Custody Classification*, and 18 U.S.C. § 3621(b) when they denied his request for a lesser-security transfer to a RRC.  Petitioner bases his contention on the fact that he had a very low "security point score" calculated by the BOP for purposes of an inmate's custody classification.  In the parlance of the BOP, his security score was so low that he was in "negative variance" and thus was in the classification of "community custody."

Title 18 of the United States Code, Section 3621(b) states the following:

The Bureau of Prisons shall designate the place of the prisoner's

10

imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering - -

    (1)  the resources of the facility contemplated;

    (2)  the nature and circumstances of the offense;

    (3)  the history and characteristics of the prisoner;

    (4)  any statement by the court that imposed the sentence - -

        (A)  concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

        (B)  recommending a type of penal or correctional facility as appropriate; and

    (5)  any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).  PS5100.08 provides that community custody is:

> [t]he lowest custody level assigned to an inmate which affords the lowest level of security and staff supervision.  An inmate who has **COMMUNITY** custody *may* be eligible for the least secure housing, including any which is outside the institution's perimeter, may work on outside details with minimal supervision, and may participate in community-based program activities if other eligibility requirements are satisfied.

(Buege Decl. ¶ 8, Attach. D at 4 (italicized emphasis added).)

Although an inmate who has a "community custody" classification may be eligible for housing "outside the institution's perimeter," there is no requirement

11

that the BOP must house the inmate who has such a low security score in a RRC or halfway house. See 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . ."). The BOP's classification procedure is within the discretion of the Attorney General as delegated to the Director of the BOP,[2] and inmates do not have a constitutional right to a particular classification. See *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (stating that no due process protections are required regarding prisoner

---

[2]  28 C.F.R. § 0.96 is entitled "Delegations," and states as follows:

The Director of the Bureau of Prisons is authorized to exercise or perform any of the authority, functions, or duties conferred or imposed upon the Attorney General by any law relating to the commitment, control, or treatment of persons . . . charged with or convicted of offenses against the United States, including the taking of final action in the following-described matters:

. . . .

    (c)    Designating places of imprisonment or confinement where the sentences of prisoners shall be served an ordering transfers from one institution to another[.]

. . . .

    (o)    Promulgating rules governing the control and management of Federal penal and correctional institutions and providing for the classification, government, discipline, treatment, care, rehabilitation, and reformation of inmates confined therein[.]

28 C.F.R. § 0.96.

classification and eligibility for rehabilitative programs in the federal system, and that "[P]etitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process"); *Carney v. Houston*, 33 F.3d 893, 894 (8th Cir. 1994) (affirming the district court's conclusion that "the language of the score sheet did not provide a protected liberty interest because it merely set out a process for determining whether an inmate should be 'considered' for promotion, not 'when an inmate must be given a promotion'"). Therefore, Petitioner's low-security-risk point score did not require that the BOP place him in a half-way house or a RRC as his place of confinement.

## CONCLUSION

Because the BOP made its recommendation for 150-to-180 days of RRC placement for Petitioner after conducting the required individualized assessment under the SCA, the RRC-placement recommendation by BOP staff was allowable. *See Miller*, 527 F.3d at 758 (stating that the BOP should conduct a "good faith" analysis of these criteria, but that the statute does not require the BOP to provide prisoners with a detailed statutory analysis).[3] And the BOP is not

---

[3] In Petitioner's Reply (Doc. No. 16), he informed the Court that he learned that his RRC placement had been reduced from a 150-to-180-day placement to a 120-day placement, and he raised the issue of whether he was being retaliated against. In an Order dated February 23, 2010, this Court required Respondent to respond explaining "the basis for Petitioner's RRC-placement reduction, or alternatively, to indicate that the BOP will comply with the unit team's

(Footnote Continued on Next Page)

required, as a result of Petitioner's low-security-risk score, to transfer Petitioner to a halfway house or RRC. Therefore, Petitioner's Petition should be denied.

## RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1), be **DENIED**;

2. Petitioner's Motion for Judgment on the Pleadings (Doc. No. 8), be **DENIED**; and

3. This action be **DISMISSED WITH PREJUDICE**.

Date: March 3, 2010

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

---

(Footnote Continued from Previous Page)
recommendation of a 150-to-180-day RRC placement, so that this Court can, in conjunction with ruling on Petitioner's Petition and Motion for Judgment on the Pleadings, assess Petitioner's retaliation assertion." (Doc. No. 18.) On March 2, 2010, Respondent filed a response and the Declaration of Karen Jussila. (Doc. Nos. 19, 20.) Therein, Respondent explains that the Community Correction's Office had determined prior to the receipt of this Court's February 23, 2010 Order, "that it was appropriate to increase [Petitioner's] RRC placement to 175 days[.]" (Doc. No. 19, Government Response to Petitioner's Reply 4-5.) Accordingly, this Court finds that Petitioner's inquiry regarding any retaliation is moot.

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 17, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.